TATE, Judge.
This is a suit on a fire insurance policy. Plaintiffs Fountain and Cruse sue to collect fire damage sustained by a bulldozer owned by them and insured against fire loss by the defendant company. The defendant contends that damage from the fire was completely repaired, while the plaintiffs allege that the bulldozer was a complete loss because of the fire, despite an unsuccessful attempt to repair it.
The trial court dismissed the plaintiffs’ suit, and an appeal was taken on their behalf. (Since the plaintiff Cruse had died before judgment, such was a nullity as against him, and his widow’s appeal has previously been dismissed without prejudice. La.App., 161 So.2d 120.)
The plaintiffs had purchased the bulldozer in January 1959 from the Southern Equipment and Tractor Company. The purchase price of the tractor was twenty-one thousand-odd dollars. (For convenience, we will use round figures in the discussion of the facts.)
Following the purchase, for approximately two and one-half years the plaintiffs used the bulldozer in their sand and gravel business at their gravel pit. On June 28, 1961, however, the tractor caught on fire and was damaged.
An independent appraiser and Southern Equipment’s employees checked and appraised the fire damage, the Southern Equipment repaired it, in the net amount of some six thousand seven hundred dollars. The bulldozer was returned to the plaintiffs on August 7th. In executing their proof of loss and in endorsing a draft for such amount of repairs, the plaintiffs reserved their right to recover any further damage caused to the bulldozer by the fire.
The plaintiffs contend that, when the tractor was returned, it had not been properly repaired. They therefore sue to recover their nine thousand dollar equity in *129 the bulldozer on the basis that the tractor was completely useless because of fire damage.
The plaintiffs’ proof consists principally of their own testimony and of their equipment operator to the effect that, after the tractor was returned, an attempt was made to use the bulldozer for from fifteen minutes to an hour, but it would not operate properly. The witnesses stated that there was a grinding noise in the final (rear) drive, and that the tracks were not tracking properly and were tearing up the rollers, indicating possible frame damage.
Aside from this brief experience with the tractor (which was shortly thereafter seized by a mortgage creditor along with all of the rest of their other equipment), the plaintiffs made no other effort to verify the cause or existence of these alleged defects, such as by any further inspection either by a mechanic or by themselves (such as by removing the drive-housing to see what was wrong).
On the other hand, the testimony of the independent insurance appraiser and of Southern Equipment’s Baton Rouge shop foreman is very strong and detailed concerning their inspection and repair of the bulldozer in July of 1961 following the fire. It very strongly indicates that the fire damage was confined to the front of the' tractor and could not have affected the frame or the rear drive. This testimony is corroborated by the testimony of Southern Equipment’s service manager, who inspected the bulldozer immediately after the fire.
In addition, however, the testimony of Southern Equipment’s Monroe shop foreman definitely negatives fire damage as the cause of bulldozer defects following August, 1961.
This witness disassembled the bulldozer in January of 1962 (some five months after the machine had initially been returned to the plaintiffs), after Southern Equipment had repossessed it. He found that the only damage to the rear drives had resulted from wear and tear (for instance by sand eating into the highly machined and polished metal surface of the housing seal-rings), as had the condition of the frame, normal and consistent with the usual wear and tear from the use of the tractor for two and one-half years in connection with the plaintiffs’ sand and gravel operations at their gravel pit.
In our opinion, the trial court correctly held that the great preponderance of the evidence shows that all fire damage had been completely repaired and paid for by the defendant insurer when the bulldozer was returned to the plaintiffs in August of 1961.
In the absence of any evidence relating the alleged defects to fire damage insured by the defendant under its policy, the plaintiffs’ complaints that the machine did not operate properly after it was returned to them do not constitute evidence sufficient to prove their case, especially in view of the strong, preponderating, and positive evidence by the defendant’s witnesses to the effect that any machine defects following the fire (and these are not proved to have been of any grave nature) resulted solely from ordinary wear and tear and could not possibly have been caused by fire damage.
For the reasons assigned, the judgment of the trial court dismissing the suit is affirmed; the plaintiff-appellant to pay the costs of this appeal.
Affirmed